IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIE JUNIOR McCASKILL, II,    )
                                )
            Plaintiff,          )
                                )
        v.                      )    CIVIL NO. 1:05CV536
                                )
DEPARTMENT OF THE ARMY,         )
FRANCIS J. HARVEY,              )
Secretary of the Army,          )
                                )
            Defendant.          )


MEMORANDUM OPINION

BULLOCK, District Judge


On June 13, 2005, pro se Plaintiff Willie McCaskill filed

this suit alleging that the Defendant, Francis J. Harvey,

Secretary of the Army, Department of the Army, discriminated

against him on the basis of race in violation of Title VII of the

Civil Rights Act of 1964.  42 U.S.C. §§ 2000e-16, et seq. (2005).

This matter is before the court on Defendant's motion to dismiss

Plaintiff's claims pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  Alternatively, Defendant moves for

summary judgment.  See Fed. R. Civ. P. 56.

For the reasons stated below, Defendant's motion for summary

judgment will be granted.

FACTS

When the alleged discrimination occurred, McCaskill, an African-American, was employed as a civilian Air Traffic Control Specialist at Fort Bragg, North Carolina. In response to a vacancy announcement, he applied for the position of Supervisory Air Traffic Control Specialist at Fort Bragg, Camp Mackall. McCaskill "had an extensive and impressive Air Traffic Control career" as well as "considerable training." (Compl. Enclosure #1 at 4 (U.S. Equal Employment Opportunity Comm'n Decision, No. 140-2004-00183X (Feb. 11, 2005)).) Nonetheless, a Caucasian candidate who had more direct supervisory experience than McCaskill was selected to fill the vacancy.

After Plaintiff discovered that another candidate had been selected, he filed a formal complaint with the Equal Employment Opportunity Office at Fort Bragg alleging that his nonselection was based on race. The complaint was heard before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge on October 26, 2004. In a written decision dated February 11, 2005, the Administrative Judge found that McCaskill had not been discriminated against on the basis of race.

Plaintiff was represented by an attorney, Ralph Bryant, during the administrative proceedings. (Pl.'s Mem. Opp'n Mot. Dismiss and Alternative Summ. J. (hereinafter "Pl.'s Mem. Opp'n")

2

at 2.)  In a final action letter dated March 3, 2005, and addressed to Ralph Bryant, the Department of the Army stated its decision to implement the finding of the Administrative Judge. The letter also contained a summary of Plaintiff's appeal rights, including the right "'to file a civil action in an appropriate United States District Court.'"  (Compl. Enclosure #2 at 2 (quoting 29 C.F.R. § 1614.407 (2006)).)  A copy of the letter was sent to Plaintiff.  Plaintiff's attorney received the final action letter on March 10, 2005.  Plaintiff received a <u>copy</u> of the final action letter on March 15, 2005.

According to Plaintiff, Bryant assured McCaskill that he would file a civil action on Plaintiff's behalf should the administrative claim be unsuccessful.  McCaskill claims that Bryant reassured him of the same after the adverse decision from the EEOC Administrative Judge.  Upon receiving his copy of the final action letter, Plaintiff attempted to contact his attorney by telephone "several times, sometimes two or more times a day, to ask him to proceed" with the civil suit.  (<u>Id.</u> at 6.)

Plaintiff claims that Bryant did not return his telephone calls until the week of May 21, 2005.  At that time, Bryant informed his client that, due to an overwhelming caseload, he could not continue to represent him.  Bryant advised McCaskill that McCaskill had ninety days from the receipt of the final action letter to file suit in federal court.  According to

3

McCaskill, his attorney did not inform him that "Bryant had
received his copy of the final agency action or that the 90 day
deadline might begin to run from that date rather than the date
the Plaintiff received his copy of the final agency decision."
(Id.)  In the same conversation, Plaintiff asked Bryant to send
him the transcripts of the administrative hearing "so that he
could try to find another attorney."  (Id.)  Plaintiff received
the transcripts six days later on May 27, 2005.

     McCaskill claims that he contacted "other attorneys" to
represent him in this action, but that each one stated the
ninety-day filing deadline was too close for them to consider
taking the case.  (Id. at 3.)  McCaskill also contends that none
of the attorneys indicated the ninety-day clock may have begun
from the date Bryant received the letter if that were earlier
than the date McCaskill received the letter.

     While still seeking legal representation, Plaintiff filed
the instant suit pro se to meet the ninety-day deadline.  Based
on Plaintiff's belief that the deadline began to run on the date
he (not his attorney) received the final action letter, McCaskill
calculated that the filing deadline was June 13, 2005.  According
to Plaintiff, he prepared the Complaint himself, drove from
Fayetteville, NC, to Greensboro, NC, and filed the suit in person
on June 13, 2005.

4

On August 9, 2005, Defendant's motion for an extension of time to file an answer was granted.  On September 16, 2005, Defendant filed its Motion to Dismiss and in the Alternative for Summary Judgment on the basis that Plaintiff failed to timely file his complaint within ninety days of receiving the final action letter.  Plaintiff now has retained counsel who filed a response to Defendant's motion.

DISCUSSION

I.    Subject Matter Jurisdiction

Defendant moves to dismiss this action for lack of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), although no argument in support of this motion is made in Defendant's briefs. The Supreme Court has already spoken dispositively on this point. In Irwin v. Dep't of Veterans Affairs, the Court held that a rebuttable presumption exists that statutory time limits under Title VII are not jurisdictional.  498 U.S. 89, 95-96 (1990). While Congress retains the right to rebut that presumption, they have not exercised it.  See id. at 96 ("Congress, of course, may provide otherwise if it wishes to do so").[1]

_____

[1] The statutory time limit at issue in Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990), and in this case is located at 42 U.S.C. § 2000e-16(c).  The only amendment to that section enacted after the Supreme Court's holding in Irwin came in 1991.
(continued...)

Although <u>Irwin</u> adopted a general rule regarding "the
applicability of equitable tolling in suits against the
Government," the Court was, in fact, facing the same time-limit
provision, 42 U.S.C. § 2000e-16(c), that is currently before this
court. <u>See</u> 498 U.S. at 92, 95. Accordingly, the court finds
that the ninety-day deadline established by Congress in 42 U.S.C.
§ 2000e-16(c) is not jurisdictional. This finding is consistent
with other Title VII determinations in the Fourth Circuit. <u>Cf.</u>
<u>Zografov v. V.A. Med. Ctr.</u>, 779 F.2d 967, 968-69 (4th Cir. 1985)
(concluding that failure to comply with time limit in Title VII
claim was not jurisdictional); <u>Keene v. Potter</u>, 232 F. Supp. 2d
574, 580 (M.D.N.C. 2002) (stating that failure to exhaust Title
VII administrative remedies is not a jurisdictional bar under
Fourth Circuit law).

Therefore, the motion to dismiss based on lack of subject
matter jurisdiction will be denied. The court must now consider
whether the motion should be reviewed under Federal Rules of
Civil Procedure 12(b)(6) or 56.

---

[1](...continued)
<u>See</u> Civil Rights Act of 1991, Pub. L. No. 102-166, § 114, 105
Stat. 1071, 1079 (1991). While that amendment extended the time
limit to file an action in federal court from thirty to ninety
days, it did not otherwise disturb the language of that section.
<u>Id.</u>

6

II.  Standard of Review

"If . . . matters outside the pleading [that sets forth the
initial claim] are presented to and not excluded by the court,
the [12(b)(6)] motion shall be treated as one for summary
judgment and disposed of as provided in Rule 56." Fed. R. Civ.
P. 12(b).  Both parties have attached exhibits to briefs filed
for and against Defendant's motion to dismiss.  Such documents
are not pleadings.  <u>See</u> Fed. R. Civ. P. 7(a).  The court will not
exclude the exhibits presented by the parties.  Therefore, the
court will treat Defendant's motion to dismiss as one for summary
judgment under Rule 56.[2]

Summary judgment must be granted when an examination of the
pleadings, affidavits, and other proper exhibits demonstrates
that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law.  <u>See</u>
Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,
322-23 (1986).  The moving party bears the burden of persuasion
on all relevant issues.  <u>Celotex</u>, 477 U.S. at 323.  Once the

---

[2] The court is not converting <u>sua</u> <u>sponte</u> the Rule 12(b)(6)
motion to a motion for summary judgment.  The Defendant's
responsive pleading was captioned Motion to Dismiss and in the
Alternative for Summary Judgment.  Therefore, McCaskill was on
notice that the court might treat the motion as one for summary
judgment.  <u>See</u> <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d
253, 260 (4th Cir. 1998).  In addition, McCaskill himself
contends that the motion ought to be treated as one for summary
judgment.  (Pl.'s Mem. Opp'n at 1.)

moving party has met that burden, the nonmoving party must then persuade the court that a genuine issue remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). When the motion is supported by affidavits, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); see also Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994) (noting that the moving party on summary judgment can simply argue the absence of evidence by which the nonmovant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Id. at 252.


III. Statute of Limitations

     The Department of the Army contends that McCaskill failed to file this suit within ninety days of receiving the final action letter and that, therefore, the Plaintiff's claim is time-barred. Title VII provides that an employee is authorized to file a civil action "within 90 days of receipt of notice of final action taken by [the EEOC]." 42 U.S.C. § 2000e-16(c) (2005); see also 29

8

C.F.R. § 1614.407 (2006). This section effectively creates a ninety-day statute of limitations in which the employee may file a federal court claim. Watts-Means v. Prince George's Family Crisis Ctr., 7 F.3d 40, 42 (4th Cir. 1993). Thus, "the right to bring suit under Title VII is lost, absent grounds for equitable tolling, by a failure to file within the ninety-day period . . . ." Dixon v. Digital Equip. Corp., 976 F.2d 725, 725 (4th Cir. 1992). The ninety-day filing period begins the day that the final agency decision is received. Truesdale v. Potter, No. 1:01CV00427, 2003 U.S. Dist. LEXIS 4533, at *9-11 (M.D.N.C. Mar. 24, 2003); see also Prophet v. Armco Steel, Inc., 575 F.2d 579, 580 n.1 (5th Cir. 1978) ("For purposes of computing this 90-day limitation period the first day is omitted and last day counted."). If the actual date of receipt is known and undisputed, the ninety-day period is counted from that date. Nguyen v. Inova Alexandria Hosp., No. 98-2215, 1999 U.S. App. LEXIS 17978, at *3 (4th Cir. July 30, 1999).

        "Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." Irwin, 498 U.S. at 92 (internal quotations omitted). Therefore notice of the final action letter is "received" when the letter is delivered to either the claimant or his attorney, whichever occurs first. See id. at 92-93;

9

<u>Seitzinger v. Reading Hosp. & Med. Ctr.</u>, 165 F.3d 236, 239 n.1
(3d Cir. 1999).  At least one court, following the EEOC's own
regulation, has disregarded the date on which the claimant
received actual notice of the agency's final action.  <u>Barbagallo</u>
<u>v. Potter</u>, No. 1:04CV00839, 2005 U.S. Dist. LEXIS 23470, at *4-6
(M.D.N.C. Oct. 4, 2005) ("The triggering date is when the
attorney, if the employee designates an attorney as his
representative, 'receives' the right-to-sue letter.").[3]

To show the actual receipt date, Defendant submitted the
sworn statement of Valerie Herbert, an EEO Assistant whose
primary duty was to dispatch correspondence.  (Def.'s Mem. Supp.
Mot. Dismiss and Alternative Summ. J. (hereinafter "Def.'s Mem.
Supp.") Ex. A at ¶¶ 4-5.)  Herbert states that she mailed the
Final Agency Decision to both the Plaintiff and his attorney.
The sworn statement and attached exhibits are not clear as to the
exact number of mailings that occurred.[4]  It is clear from the

---

[3] Six months after the Third Circuit's decision in
<u>Seitzinger v. Reading Hosp. & Med. Ctr.</u>, 165 F.3d 236 (3d Cir.
1999), the EEOC promulgated an amendment to § 1614.605 entitled
"Representation and Official Time," which added the following
language: "When the complainant designates an attorney as
representative, service of all official correspondence shall be
made on the attorney and the complainant, <u>but time frames for</u>
<u>receipt of materials shall be computed from the time of receipt</u>
<u>by the attorney</u>."  64 Fed. Reg. 37,644, 37,661 (July 12, 1999)
(emphasis added) (codified at 29 C.F.R. pt. 1614.605).

[4] In her sworn statement, Herbert claims to have mailed
copies of the Final Agency Decision on March 3, 2005, and on
March 7, 2005.  (Def.'s Mem. Supp. Ex. A at ¶¶ 4-5.)  Herbert
(continued...)

10

exhibits that copies of the Final Agency Decision were sent by Domestic Return Receipt on March 7, 2005. Plaintiff's attorney, Ralph Bryant, signed for the final action letter on March 10, 2005. McCaskill signed for his _copy_ of the final action letter on March 15, 2005. McCaskill admits that he and his attorney received the final action letter on those respective dates.

Because McCaskill's attorney received the final action letter before the claimant and because the actual date of receipt is known and undisputed, the ninety-day deadline should be calculated from March 10, 2005. The parties agree that the deadline, as calculated from the attorney's receipt, was June 8, 2005. (Def.'s Mem. Supp. at 9; Pl.'s Mem. Opp'n at 6.) McCaskill filed his complaint on June 13, 2005, five days after the deadline expired. Therefore, the Plaintiff failed to timely file this civil action.

IV. Equitable Tolling

McCaskill argues that the circumstances in this case merit equitable tolling, the application of which would make

---

[4](...continued)
notes that the March 7 letters were mailed "Domestic Return Receipt." (Def.'s Mem. Supp. Ex. A at ¶ 5.) The signed receipts are attached as Exhibits A-2 and A-3. For purposes of this motion for summary judgment, the court will consider the signed receipts from the March 7, 2005, mailing (Def.'s Mem. Supp. Exs. A-2 and A-3) as the relevant final action letter receipt dates because those dates are most favorable to the nonmovant.

Plaintiff's Complaint timely. Because statutory time limits under Title VII are not jurisdictional, they are subject to equitable tolling. See <u>Irwin</u>, 498 U.S. at 92, 95-96 (extending its holding in <u>Zipes</u> to the filing of a civil action against the federal government after receiving a final action letter from the EEOC); <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); <u>see also</u> <u>Gayle v. United Parcel Serv., Inc.</u>, 401 F.3d 222, 226 (4th Cir. 2005) (determining that the 180-day time limit under Title VII was subject to equitable tolling); <u>Zografov</u>, 779 F.2d at 968-69 (concluding that thirty-day time limit under Title VII was subject to estoppel).

"As a general matter, principles of equitable tolling may, in the proper circumstances, apply to excuse a plaintiff's failure to comply with the strict requirements of a statute of limitations." <u>Harris v. Hutchinson</u>, 209 F.3d 325, 328 (4th Cir. 2000). The court, however, has a duty to uphold time limitations enacted by the legislative branch. <u>Yarborough v. Burger King Corp.</u>, No. 1:04CV00888, 2005 U.S. Dist. LEXIS 36315, at *6 (M.D.N.C. Dec. 22, 2005). "Procedural requirements established by Congress for gaining access to the federal courts are not to

12

be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984). Thus, the equitable remedy of tolling is "typically [applied] only sparingly." Irwin, 498 U.S. at 96; see also Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) ("The circumstances under which equitable tolling has been permitted are . . . quite narrow.").

The Fourth Circuit in Rouse v. Lee explained that equitable tolling is available only in "'those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting Harris, 209 F.2d at 330), cert. denied, 541 U.S. 905 (2004). Those rare instances include "situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."[5] Irwin, 498 U.S. at 96. The instant suit is not one in which a plaintiff

---

[5] Two other situations in which equitable tolling has been applied include cases "where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon[,] or where the court has led the plaintiff to believe that she had done everything required of her." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (internal citations omitted). Neither of those fact patterns is present in this case.

13

filed a defective pleading within the statutory time limit; nor
did a defendant engage in any misconduct.

McCaskill argues that he received inadequate notice of the
deadline for his right to sue. (Pl.'s Mem. Opp'n at 6.) The
Supreme Court in <u>Baldwin</u> has briefly acknowledged this as grounds
for equitable tolling. 466 U.S. at 151 (citing <u>Gates v.</u>
<u>Georgia-Pacific Corp.</u>, 492 F.2d 292 (9th Cir. 1974)). In <u>Gates</u>,
the EEOC's letter to the claimant advised her that it was closing
her case, but the letter did not indicate that she had thirty
(now ninety) days to file suit in federal court. 492 F.2d at
295. The omission of the latter constituted a failure to comply
with the agency's own regulation. <u>Id.</u> Once advised of her
rights, Gates promptly commenced her action. <u>Id.</u> The Ninth
Circuit held that tolling was appropriate because the EEOC's
letter to the claimant, although informing her of its final
action, did not apprise her of her right to sue or of the time
period for doing so. <u>Id.</u> In making that decision, the court
specifically stated that its holding was restricted to the facts
of that case. <u>Id.</u>

The Fourth Circuit has applied equitable tolling on the
basis of inadequate notice in a similar circumstance. In <u>Garner</u>
<u>v. E. I. Du Pont de Nemours & Co.</u>, the court concluded that a
"mere letter" informing the claimant that conciliation has not
succeeded is insufficient to trigger the statutory time limit.

14

538 F.2d 611, 613 (4th Cir. 1976) ("[T]he form of notice contemplated by the statute would be given by the [EEOC] in, and only in, the specific shape of a notice expressly informing the aggrieved party of his right to file a suit in the federal courts."); see also Williams v. Hidalgo, 663 F.2d 183, 187 (D.C. Cir. 1980) (emphasizing that proper notice under 42 U.S.C. § 2000e-16(c) includes notice of both the right to sue and the applicable time limit).

In this case, Plaintiff acknowledges that he received the final action letter and that the letter advised him of the ninety-day deadline to file a civil action. Nevertheless, Plaintiff contends that the letter failed to alert him that "he needed to determine the date that his attorney received the same letter and measure the deadline by that date if earlier than the date that he received the final agency action." (Pl.'s Mem. Opp'n at 6.) This argument is unpersuasive. While an explanation in the EEOC's final action letter of official time calculation for claimants represented by counsel might be desirable, such an inclusion is not necessary for adequate notice. As is discussed later in this opinion, the letter itself--addressed to Plaintiff's attorney and not to Plaintiff-- placed McCaskill on notice that the deadline might run from the date his attorney received the letter. The threshold considerations for adequacy were met: McCaskill's copy of the

15

letter notified him of the EEOC's final decision, of his right to file a civil action, and of the ninety-day time limit in which to do so. Thus, McCaskill's notice was sufficient.

The Fourth Circuit has recognized that equitable tolling is also appropriate when "extraordinary circumstances beyond plaintiffs' control [make] it impossible to file the claims on time." Harris, 209 F.3d at 330 (internal quotations omitted); accord Chao, 291 F.3d at 283; Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). The test adopted to make such a determination provides that an otherwise time-barred plaintiff is entitled to relief only if he can show (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); accord Rouse, 339 F.3d at 246; Harris, 209 F.3d at 330.

McCaskill argues that his failure to timely file was "attributable to the breakdown in the attorney-client relationship." (Pl.'s Mem. Opp'n at 12.) This breakdown apparently stems from (1) the attorney's assurances to Plaintiff that the attorney would file the civil action, (2) the attorney's neglect in returning Plaintiff's phone calls until some seventy days into the limitation period, (3) the attorney informing Plaintiff at that time that the attorney would no longer be able to represent Plaintiff, and (4) the attorney's neglect to inform

16

Plaintiff that the ninety-day deadline ran from the earliest receipt date between the attorney and the client. To bolster the "unusual circumstances presented by Plaintiff's abandonment by his attorney," McCaskill also emphasizes that notice of the final agency decision was misleading, that Plaintiff lacked actual or constructive knowledge that the deadline might run from the attorney's receipt of the letter, that material information was inaccessible to Plaintiff, and that the Plaintiff acted diligently in pursuing a judicial remedy.[6] (Pl.'s Mem. Opp'n at 12.)

Unfortunately for Plaintiff, while the facts of this case are unusual, they fall short of being extraordinary. Indeed, the acts of McCaskill's attorney amount to no more than excusable neglect.[7] In support of his extraordinary circumstances claim, Plaintiff relies on the decision in Seitzinger. 165 F.3d at 236.

---

[6] Regardless of the circumstances, equitable tolling is not appropriate "where the claimant failed to exercise due diligence in preserving his legal rights." Irwin, 498 U.S. at 96. Because the court bases its decision on other grounds, a diligence analysis is unnecessary.

[7] "'As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright line rules.'" Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (quoting Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)). The Supreme Court has drawn one fairly vivid line along the contours of equitable tolling by concluding that the doctrine does "not extend to . . . a garden variety claim of excusable neglect." Irwin, 498 U.S. at 96; Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc), cert. denied, 541 U.S. 905 (2004).

In that case, the Third Circuit concluded that where an attorney
affirmatively lies to a client--indicating that a suit has been
timely filed when it has not--then the attorney's actions are "of
a type that [go] beyond garden variety neglect."  <u>Id.</u> at 241.
Whatever culpability McCaskill's attorney is due, Plaintiff has
made no claim that his attorney affirmatively lied to him or
engaged in any purposeful misconduct.  Plaintiff's reliance on
<u>Seitzinger</u> is misplaced.

The Fourth Circuit has held that "a mistake by a party's
counsel in interpreting a statute of limitations does not present
the extraordinary circumstance beyond the party's control where
equity should step in to give the party the benefit of his
erroneous understanding."  <u>Harris</u>, 209 F.3d at 331; <u>see also</u>
<u>Rouse</u>, 339 F.3d at 248-49 (citing eight Circuits, including the
Third, that have ruled similarly).  More recently, the Fourth
Circuit concluded that attorney negligence, such as letting a
case "[fall] through the cracks," is even less extraordinary than
the misinterpretation of time limits in <u>Harris</u>.  <u>Gayle</u>, 401 F.3d
at 227.  The facts of the instant case fall somewhere between the
two.  Nevertheless, Bryant's failure to identify correctly the
ninety-day deadline's trigger date (or, if he did, to inform his
client of that date) rests well within the boundaries of garden
variety excusable neglect.

18

The court in <u>Rouse</u> also noted that "the actions of [a

client's] attorneys are attributable to [the client], and thus,

do not present 'circumstances external to the party's own

conduct.'"  339 F.3d at 249 (quoting <u>Harris</u>, 209 F.3d at 330);

<u>see also</u> <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.</u>

<u>P'ship</u>, 507 U.S. 380, 397 (1993) (requiring that clients "be held

accountable for the acts and omissions of their chosen counsel");

<u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 634 (1962) ("each party is

deemed bound by the acts of his lawyer-agent and is considered to

have notice of all facts, notice of which can be charged upon the

attorney") (internal quotations omitted).  Therefore, certified

receipt of the final action letter by Plaintiff's attorney on

March 10, 2005, is attributable to Plaintiff.  If attributable to

Plaintiff, then McCaskill's failure to identify the correct

receipt date cannot be due to circumstances beyond his own

conduct or control.  <u>Cf.</u> <u>Rouse</u>, 339 F.3d at 250.

Two final points need to be made.  First, the final action

letter was not misleading with respect to Plaintiff's belief that

the deadline ran from the date Plaintiff received the letter.

While the envelope may have been addressed to McCaskill, the

letter was addressed to "Ralph Bryant, Esquire."  (Compl.

Enclosure #2 at 1.)  The salutation read "Dear Mr. Bryant."

(<u>Id.</u>)  The body of the letter referenced McCaskill only as "your

client" and did so seven times.  (<u>Id.</u>)  The lone place where

19

Plaintiff's name appears is at the very end of the letter, under the heading "Copy Furnished." (<u>Id.</u> at 6) A reasonable person would have been on notice that "'90 calendar days [from] receipt of the final action'" could run from the time Bryant received the letter. (<u>Id.</u> at 4 (quoting 29 C.F.R. § 1614.407 (2006)).)

Second, despite his status as a <u>pro</u> <u>se</u> litigant at the time this suit was filed, McCaskill's lack of understanding about how the relevant time limitation operates is not a basis for equitable tolling. <u>Sosa</u>, 364 F.3d at 512 ("ignorance of the law is not a basis for equitable tolling"); <u>see also</u> <u>United States v. Riggs</u>, 314 F.3d 796, 799 (5th Cir. 2002) ("petitioner's own ignorance or mistake does not warrant equitable tolling"); <u>Delaney v. Matesanz</u>, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting the argument that a <u>pro</u> <u>se</u> prisoner's ignorance of the law warranted equitable tolling).

CONCLUSION

"Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." <u>Harris</u>, 209 F.3d at 330. Considering the facts in a light most favorable to the Plaintiff, McCaskill cannot show that extraordinary circumstances prevented him from

20

filing this suit within the prescribed time period; nor can he show that the circumstances that did exist were beyond his control or external to his own conduct. Therefore, equitable tolling is not appropriate. Without tolling, Plaintiff's filing is untimely.

For the reasons set forth in this memorandum opinion, the court will grant Defendant's motion for summary judgment.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

_____
United States District Judge

February 8, 2006